FIDELITY & DEPOSIT CO. *v.* PINK, SUPERINTENDENT OF INSURANCE OF NEW YORK.

No. 38. Argued November 17, 18, 1937.—Decided December 6, 1937.

*Mr. Harold L. Smith,* with whom *Messrs. Ralph S. Harris* and *E. Myron Bull* were on the brief, for petitioner.

*Mr. Irvin Waldman,* with whom *Mr. Alfred C. Bennett* was on the brief, for respondent.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

In 1930 Southern Surety Company, a New York corporation, issued to John DeMartini Co., Inc., a fidelity insurance bond and on the same day reinsured half of the risk with petitioner, Fidelity & Deposit Company of Maryland. The DeMartini Co. claimed a loss. While this was in course of adjustment (March, 1932), a New York court adjudged the Southern Company insolvent and dissolved it. Respondent Pink, Superintendent of Insurance for New York, took possession of its property and entered upon liquidation of the business.

He allowed but did not discharge the DeMartini Company's claim. Thereupon he demanded that petitioner pay half of it. This having been refused he instituted

these proceedings in the United States District Court to recover upon the reinsurance contract. Judgment went in his favor; the Circuit Court of Appeals affirmed; the matter is here upon certiorari. The facts are not in dispute.

The contract between the two insurance companies incorporated the "standard form of reinsurance agreement" adopted by the Surety Association of America in 1930. This form provides—

"In consideration of the premium payable under section 1 hereof . . . . . . . . . . . hereinafter called the Reinsurer, does hereby reinsure Fidelity & Deposit Company of Maryland, hereinafter called the Reinsured, under bond numbered . . . . . . . . . . . , together with all riders attached thereto, hereinafter called the Bond, issued by the Reinsured in the penalty of . . . . . . . . . . . Dollars, in favor of . . . . . . . . . . . (obligee), and in behalf of . . . . . . . . . . . hereinafter called the Principal, against loss thereunder and against costs and expenses, as hereinafter defined, and interest. A copy of the bond is or may be attached hereto, and is hereby made a part of this agreement.

"The foregoing agreement is subject to the following conditions and provisions: . . ." (These appear in fifteen succeeding sections.)

Section 4, copied in the margin,[1] contains the following, among other things—

"The Reinsurer's proportionate share of a loss under the bond, of costs and expenses as hereinafter defined, and of interest, shall be paid to the Reinsured upon proof of the payment of such items by the Reinsured, and upon delivery to the Reinsurer of copies of all essential documents concerned with such loss and costs and the payment thereof. The Reinsured may, however, give the Reinsurer written notice of its intention to pay the loss on a certain date, and may require the Reinsurer to have

its share of such loss in the hands of the Reinsured by such date: provided, however, that the Reinsurer in any event shall have a period of forty-eight hours, after the receipt of such written notice from the Reinsured, to mail or otherwise despatch its payment; and provided further that in any such case the Reinsurer, if it desires to do so, may pay its share of the loss by means of a check drawn in favor of the obligee of the bond."

Petitioner's counsel maintain that the standard form provides for insurance only "against loss"; that the reinsurer thereunder becomes liable only upon "proof of the payment of such items by the Reinsured, and upon delivery to the Reinsurer of copies of all essential documents concerned with such loss and costs and the payment thereof"; that payment by the reinsured is a condition precedent to the reinsurer's liability. Sundry provisions in the form, indicated below, they say lend support to this view.[1]

---

[1] Introduction—"Does hereby reinsure . . . against loss."

Section 3—

"3. Unless otherwise expressly agreed, the amount of liability retained by the Reinsured at its own risk both when this agreement is made and at the time of any breach of the bond resulting in a claim thereunder shall be:

"(a) If the bond be other than a depository bond or blanket bond, in no event less than the amount ceded hereunder, such retention to be carried under the bond; or

"(b) If the bond be a depository bond, in no event less than the amount ceded hereunder plus the amount of all reinsurance ceded by the Reinsured to the Reinsurer under any other depository bond or bonds issued by the Reinsurer in behalf of the Principal and effective at the time of any breach of the bond resulting in a claim thereunder, such retention to be carried under any depository bond or bonds issued and/or any depository reinsurance or reinsurances carried by the Reinsured in behalf of the Principal; or

"(c) If the bond be a blanket bond, in no event less than the amount ceded hereunder plus the amount of all reinsurance ceded by the Reinsured to the Reinsurer under any other blanket bond or bonds issued by the Reinsured in favor of the same insured and ef-

Respondent maintains that proof of payment is not a prerequisite to recovery.

Both courts below thought that *Allemannia Insurance Co.* v. *Fireman's Insurance Co.*, 209 U. S. 326 (1908),

---

fective at the time of any breach of the bond resulting in a claim thereunder; such retention to be carried under any blanket bond or bonds issued and/or any blanket bond reinsurance or reinsurances carried by the Reinsured in favor of the same insured. The actual retained liability of the Reinsured as aforesaid shall not be more remote than that ceded to the Reinsurer, whether it be primary or excess or partly primary and partly excess. . . ."

Section 4—

.         .         .         .         .

"The Reinsurer's proportionate share of a loss under the bond, of costs and expenses as hereinafter defined, and of interest, shall be paid to the Reinsured upon proof of the payment of such items by the Reinsured, and upon delivery to the Reinsurer of copies of all essential documents concerned with such loss and costs and the payment thereof. The Reinsured may, however, give the Reinsurer written notice of its intention to pay the loss on a certain date, and may require the Reinsurer to have its share of such loss in the hands of the Reinsured by such date: provided, however, that the Reinsurer in any event shall have a period of forty-eight hours, after the receipt of such written notice from the Reinsured, to mail or otherwise despatch its payment; and provided further that in any such case the Reinsurer, if it desires to do so, may pay its share of the loss by means of a check drawn in favor of the obligee of the bond.

"The Reinsurer may inspect the original documents relating to claims and losses under the bond in the possession of the Reinsured.

"The term costs and expenses shall mean all expenditures made in investigating and settling any claim under the bond; all expenditures made in investigating, settling, or defending, or attempting to defend, any suit or proceeding based upon the bond; all expenditures made in procuring or attempting to procure restitution or recovery on account of any loss, costs, or expenses; and all expenditures made in prosecuting or attempting to prosecute any person causing a loss under the bond."

Section 10—

"The Reinsurer shall be entitled to share with the Reinsured, in the proportion defined in section 2 hereof, any collateral security or indemnity held by the Reinsured . . ."

required approval of respondent's contention. This was error. The defense was well taken and should have been sustained.

We do not question the general rules concerning liability of reinsurers announced in the *Allemannia* case; but the liability under any written contract must be determined upon consideration of the words employed, read in the light of attending circumstances.

Here the two insurance companies stood upon an equal footing; both were experts in the field. The language used differs materially from that found in the policy of the Allemannia Company. There is no ambiguity and no circumstance requires disregard of the ordinary meaning of the language.

The 1930 form provides, "The Reinsurer does hereby reinsure against loss." The Allemannia policy declared the company "hereby agrees to reinsure."

Petitioner's policy says—"The reinsurer's proportionate share of the loss . . . shall be paid to the reinsured upon proof of the payment of such items by the reinsured and upon the delivery to the reinsurer of copies of all essential documents concerned with such loss and the payment thereof." The Allemannia policy contained no equivalent terms. It provided—"Upon receiving notice of any loss or claim under any contract hereunder reinsured, the said reinsured company shall promptly advise the said Allemannia Fire Insurance Company, at Pittsburg, Pennsylvania, of the same, and of the date and probable amount of loss or damage, and after said reinsured company shall have adjusted, accepted proofs of, or paid such loss or damage, it shall forward to the said Allemannia Fire Insurance Company, at Pittsburg, Pennsylvania, a proof of its loss and claim against this company upon blanks furnished for that purpose by said Firemen's Insurance Company, together with a copy of the original proofs and claim under its contract re-

insured, and a copy of the original receipt taken upon the payment of such loss; . . ."

As the standard form of 1930 was adopted twenty years after the *Allemannia* case it fairly may be assumed that the dissimilar language employed was intended to impose liability different from the one there found to exist.

The judgment below must be reversed. The cause will be remanded for further proceedings.

*Reversed.*

The CHIEF JUSTICE took no part in the consideration or decision of this cause.